

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JEREMY STOCKSTILL**,

    Plaintiff,

vs.

**CITY OF PICAYUNE; BRYAN DAWSEY**, in his official capacity as Chief of Police for City of Picayune Police Department, and **CHAD PRESTRIDGE**, individually and in his official capacity as Patrol Officer for the City of Picayune Police Department,

    Defendants.

CIVIL ACTION NO. 1:16cv4 HSO-JCG

**VERIFIED COMPLAINT**

Comes now Plaintiff Jeremy Stockstill and avers the following:

## INTRODUCTION

1.    This is a civil rights action challenging City of Picayune policy and practice, as enforced by City of Picayune Police Department, granting Picayune Main Street, Inc. proprietary control over speech occurring on public ways during Picayune Street Festivals, thereby facilitating a ban on protected means of communication.

2.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Jeremy Stockstill seeks injunctive relief, declaratory relief, and nominal damages against Defendants City of Picayune, Bryan Dawsey, in his official capacity as Chief of Police for the City of Picayune Police Department, and Chad Prestridge, individually and in his official capacity as Patrol Officer for the City of Picayune Police Department.

3.    This action concerns Plaintiff's fundamental rights to free speech and due process as set out in the First and Fourteenth Amendments to the United States Constitution.

4.      Defendants' policy and practice have deprived and will continue to deprive Plaintiff of his constitutional rights.

5.      Defendants named herein committed every act alleged and each act was committed under the color of state law and authority.

## JURISDICTION AND VENUE

6.      This action raises federal questions, specifically, under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

7.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has jurisdiction over Plaintiff's claims for injunctive relief and nominal damages.  Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction over Plaintiff's request for declaratory relief.  Pursuant to 42 U.S.C. § 1988, this Court has jurisdiction over Plaintiff's claims for costs and attorney fees.

8.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of Mississippi, because all claims arise out of this district and Defendants reside in this district.

## PLAINTIFF

9.      Plaintiff Jeremy Stockstill ("Stockstill") is a resident of Picayune, Mississippi.

## DEFENDANTS

10.      Defendant City of Picayune ("Picayune") is a municipal governmental authority in the State of Mississippi.  Picayune controls and is responsible for regulation of public streets and ways in the city.

11.      Defendant Bryan Dawsey ("Chief Dawsey") is the Chief of Police for the City of Picayune Police Department.   In his official capacity, Chief Dawsey is responsible for

overseeing and implementing all policies affecting law enforcement, including enforcement of laws on public streets and sidewalks in the city.  Chief Dawsey is sued in his official capacity.

12.     Defendant Chad Prestridge ("Officer Prestridge") is a police officer with the City of Picayune Police Department. In his official capacity, Officer Prestridge is responsible for enforcing Picayune laws and policies, including those that regulate activities on public streets and sidewalks.  Officer Prestridge is sued in his official and individual capacities.

## STATEMENT OF FACTS

### Stockstill's Religious Expression

13.     Stockstill is an evangelical Christian prompted by religious conviction to share his religious beliefs with others in public.

14.     Stockstill's message is evangelistic in nature, essentially being that all have sinned and deserve damnation but those who trust in Jesus Christ as their Savior will be saved.

15.     Stockstill seeks out opportunities to share his deeply held beliefs with others in public places and at public events.  As means for sharing his message, Stockstill seeks to hand out Christian literature (Gospel tracts) and publically proclaim (preach) his beliefs.

16.     Stocktsill considers tract distribution an essential method for conveying his message because it allows him to share his message in detail to those who do not have time or inclination to stay and talk.  Individuals can accept a tract as they pass by without stopping and read it later.

17.     Stockstill also considers preaching an important means of communication because it allows him to share his viewpoint with people as they walk by him.  No one has to stop to hear his message.

18.     Occasionally, Stockstill uses a voice amplifier at a low volume so that he can share his beliefs orally in a conversational tone and preserve his voice.

19.     Stockstill occasionally joins other like-minded individuals when conveying his religious beliefs in public.

20.     While sharing his beliefs in public, Stockstill does not obstruct passageways, hinder pedestrian traffic, or otherwise cause congestion. He is always careful to place himself in open locations out of the way of pedestrian traffic so people can freely pass by him while he conducts his religious expression.

21.     Stockstill does not participate in demonstrations. He does not draw a crowd with his expressive activity and does not intend to do so.

22.     Stockstill does not solicit money or membership to join any organization.

23.     Stockstill does not force anyone to listen to him or accept his literature.

24.     Stockstill does not litter.

25.     Stockstill desires to share his religious beliefs on public streets and sidewalks at Picayune Street Festivals because of the significant numbers of people who attend these events.

**Picayune Street Festival**

26.     The Picayune Street Festival ("Festival") is a semi-annual two-day festival that takes place in downtown Picayune, Mississippi during the Spring and Fall of each year.

27.     The Festival is organized by Picayune Main Street, Inc. ("Main Street, Inc."), a private organization that seeks to preserve the character of the downtown Picayune area and promote small local businesses. Reba Beebe is the current director for Main Street, Inc.

28.     The Festival takes place on East and West Canal Streets, and Main Street, downtown.  East and West Canal Streets extend from Highway 11, east and west respectively. Main Street juts off of West Canal Street.

29.     As public streets, these areas where the Festival takes place are open to the general public all year round.  During the Festival, portions of these streets are closed for vehicular traffic but they remain open for pedestrian traffic.

30.     Main Street, Inc. secures a special events permit from Picayune to close the streets to vehicular traffic and to use them for Festival events and vendors.

31.     The Festival offers a variety of attractions for attendees.  The Festival has over 300 vendor booths selling antiques, collectibles, pottery, jewelry, and more, stages offering live music and local entertainment, and food booths serving different types of cuisine.  Children can partake in pony rides, a fun jump, and a petting zoo.

32.     To acquire a booth, a vendor must complete a Festival application and pay a fee based on the size of the area and the type of activity: 20 foot by 10 foot arts and crafts booths cost $125, 20 foot by 10 foot full-service food booths cost $400, and 10 foot by 10 foot single-item food booths cost $150.

33.     Vendors are subject to numerous restrictions, including a prohibition on certain items, like fireworks, weapons, silly string, and canned or bottled beverages.

34.     The Festival specifically prohibits vendors from handing out printed material outside of their designated space.

35.     Vendors are also required to keep storefronts and sidewalks clear, so they can be accessible to the public for normal activities during the course of the Festival.

5

36.     At all times, the Festival is free and open to the public. There is no charge for admission to the Festival and there are no barriers hindering pedestrian access. The businesses remain open and the areas remain public. Members of the public have uninhibited access to the streets, sidewalks, and local businesses throughout the Festival area and may come and go as they please.

**Ban on Stockstill's Expression at Picayune Street Festival**

37.     On March 28, 2015, Stockstill went to West Canal Street during the Picayune Street Festival to share his religious views through distribution of Gospel tracts and occasional preaching with those attending the event.

38.     Stockstill chose this specific date and place because he knew that the Festival was taking place, promising a significant number of people with whom he could share his Christian faith.

39.     In anticipation of coming on this particular date, Stockstill had obtained a noise permit in advance. Stockstill was unsure whether the noise law would actually require a permit, since he did not intend to be loud, but because he anticipated using amplification, Stockstill sought a permit out of an abundance of caution.

40.     Stockstill sought a noise permit that would allow him to be heard – while speaking in a conversational tone – at a reasonable distance on West Canal Street between Main Street and Highway 11 in downtown Picayune during the Picayune Street Festival. The police department granted his permit request on March 9, 2015, specifically requiring Stockstill to refrain from being "loud and raucous."

6

41.     Stockstill did not intend to disrupt or participate in any Festival activities.  He only wanted to place himself in an open, accessible public area inside the Festival area and convey his Christian message – distinct from any messages presented by Main Street, Inc. or any of their vendors.

42.     Stockstill arrived that morning on March 28, 2015 around 11:30 a.m.   As expected, the Festival was open to the public and there were no barriers preventing pedestrian access.  Stockstill was free to enter without a ticket.  Admission was free.

43.     Stockstill, joined by his father, began passing out Gospel tracts inside the Festival area on West Canal Street between Highway 11 and Main Street, the precise spot for which he had obtained a noise permit.

44.     Stockstill specifically chose this spot because it is so uniquely well suited for his expressive activity.

45.     This section of West Canal Street where Stockstill stood and shared his views is at the center of the Festival, next to a public park, and close to the railroad tracks. It is four lanes wide and acts as a major traffic artery for pedestrians travelling to and from their vehicles, and between both sides of the Festival.  Like the rest of the Festival area, the section is closed to vehicular traffic.

46.     There were no buildings on either side of the portion of the street where Stockstill was standing.  There were no booths on either side of Stockstill.  The particular area, close to the railroad tracks, was uncongested and wide open for pedestrians to travel.

7

47.     More so than any other area, this spot offered Stockstill an opportunity to share his beliefs with significant numbers of people, while allowing plenty of room for pedestrians to pass by him.

48.     At around 12:15 p.m. that day, Stockstill's friend, Drew Dillard ("Dillard"), arrived and passed out Gospel tracts next to Stockstill's father on the side of the road.  Their expressive activity did not hinder pedestrian traffic, disrupt Festival events, or cause any disturbance.

49.     Shortly after Dillard arrived, Stockstill went to his truck to get his voice amplifier so he could share his message orally and conversationally with those passing by him.

50.     While Stockstill was retrieving his amplifier, Director Beebe approached Dillard and told him that they could not pass out tracts and that she was calling the police.

51.     Moments later, Stockstill came back and learned of Dillard's interaction with Director Beebe.  Soon thereafter, Officer Prestridge and Officer Maidenbaum with the Picayune Police Department approached them and informed them they needed to stop their expressive activity due to a Festival rule precluding vendors from passing out information outside of their booths.

52.     Dillard was incredulous about the comparison with vendors, since vendors are engaged in sales, but Officer Prestridge indicated the rule barred Stockstill and Dillard from passing out material, even if free.

53.     Referencing the noise permit that Stockstill had previously received from the city, Dillard tried to confirm with Officer Prestridge they could still speak orally, but Officer Prestridge said they could not project their voice or use a voice amplifier.

8

54.     Stockstill inquired whether they would break the law by passing out tracts. Officer Prestridge responded: "Don't pass that out, unless you have a booth. If you have a booth, you can do it in front of a booth."

55.     Noting the response did not answer his question, Stockstill again asked whether he was breaking the law. Officer Prestridge answered: "At this event, yes you are…You are breaking the rules of this event that you're attending."

56.     Confused, Stockstill advised Officer Prestridge he did not believe violating Festival's rules was equivalent to breaking the law, but Officer Prestridge warned Stockstill not to go that "route" with him.

57.     Stockstill asked if he could speak to Officer Prestridge's supervisor, to which, Officer Prestridge said: "You can speak to whoever you want. They're right over there… but I'm telling you right now, this is an event. It is sectioned off, closed off, and sanctioned. You entered it; it did not enter you. Okay. So if you pass out things after I told you not to, I'm gonna take you to jail. Just so you know."

58.     Officer Prestridge added: "I'm gonna put you in your place today, if you – if you push me."

59.     Dillard tried to reason with Officer Prestridge, observing that the event is open to the public. Officer Prestridge started, "I already explained to you…," but his cellphone rang and he answered it.

60.     Major Chad Dorn with Picayune police department, who is also a member of Main Street, Inc., was on the line. Officer Prestridge turned the phone to speakerphone. Major Dorn then advised Officer Prestridge such that Stockstill could hear: "Main Street has total

9

access to those streets and if – they have to have a booth in order to be there. If they're gonna be there preaching and stuff…can't hand out tracts or anything if they're gonna stay there, on Main Street."

61.     Officer Prestridge then asked Major Dorn, "Okay, what about projecting your voice?" to which Major Dorn replied, "They can't – they can't be there doing that. The Street Fair, the Main Street, does not want them there."

62.     Major Dorn elaborated: "Main Street…has a permit for that area." Officer Prestridge echoed the sentiment, looking at Stockstill: "Main Street has a permit for all these streets, okay."

63.     Stockstill wanted clarification that continuing to pass out tracts would violate law, and not just a festival rule, so, he asked Major Dorn whether he would break the law by passing out tracts. Major Dorn replied that Main Street, Inc. was making the rules for that event, stating: "Main Street – they're not allowing anybody to pass out tracts."

64.     Seeking a clearer statement, Stockstill followed up and asked Major Dorn what law he would be breaking. Officer Prestridge chimed in, saying, "You-you'll be trespassing if you don't obey their rules." Major Dorn confirmed this understanding: "Right, they can ask anybody – Main Street can ask anybody to leave."

65.     Noticing that Major Dorn had not specifically stated what the consequences would be for refusing to leave after being asked to leave, Stockstill inquired about it. And Officer Prestridge answered: "Dude, I just answered that for you. You're gonna be trespassing if you don't follow their rules. They're gonna ask you to leave, then if you don't leave, you'll be taken to jail for trespassing."

66.     The conversation with Major Dorn concluded, and Officer Prestridge proceeded to explain to Stockstill that Main Street, Inc. had proprietary control over the streets during the Festival: "Main Street called me, because they don't want you doing it.   Now you just heard Major Dorn.   He said that they have sole right and access to this.   This is their event, so they can ask anybody, by law, to leave who they want to leave.   This is not a public spot at this moment. This is their spot, their access – if they want you to leave, you have to leave.   Now they had me come over here to ask you to stop handing out tracts, and no megaphone."

67.     Dillard tried to remind about the noise permit the police granted for the amplifier, but Officer Prestridge said they did not have a permit for amplified speech during the street fair.

68.     Stockstill disagreed, noting that he had a permit to use amplification for that very spot on that very day.   Stockstill gave a copy of the permit to Officer Prestridge for review.

69.     Officer Prestridge read the permit and then asked Stockstill what distance he considered reasonable for him to be heard.   Stockstill said forty feet, and Officer Prestridge replied this distance was not reasonable for him because Stockstill would be speaking a little louder than their conversation.

70.     Then, indicating that Stockstill's permit had no effect over the wishes of Main Street, Inc., Officer Prestridge threatened: "According to Main Street, can't have it.   And I already told you, dude, we've gone round and round, and you always like to push my buttons, cause that's your way.   It's not a Christian way.   You like to push people's buttons.   You don't do any of this like God would do it.   You don't.   And, and, I'm gonna to call you out on today. If you cross the line that I've told you not to cross, I will take you to jail for trespassing….I'm just letting you know."

71.      Continuing with the threat of arrest, Officer Prestridge confirmed that Main Street, Inc. controlled the speech in the area:  "You've been told, you've been told, Jeremy, you've been told not to hand out tracts and not to use voice amplification.  Alright, I'll make contact with Main Street.  If they tell me they want ya'll gone, the next time ya'll do it, you'll either leave or you're gonna to leave with me.  Understood?"

72.      Frustrated with the stance, and concerned about arrest, Stockstill asked if there was anyone else they could talk to about the situation.  Ignoring the inquiry, Officer Prestridge commented: "I've been cool with you, through the past, up until now.  And I don't like the way you're rubbing off on me.  I don't like it.  I'm not gonna tolerate it.  I'm not."

73.      Stockstill tried to remind that they all were all bound by constitutional principles, saying:  "Alright, but we have to obey the law.  It's not personal."  But Officer Prestridge was steadfast in his position, equating Main Street, Inc. to a private property owner: "Right now, this [referring to the public street] belongs to Picayune Main Street, and it's just like when you put a sign up on a store, that says 'No Firearms Allowed.'  And you go in there with a firearm.  You're asked to remove the firearm or remove yourself, and if you don't, you're told you're trespassing."

74.      Stockstill objected to the analogy, noting that public streets are not private property and remain public property during the Festival, but Officer Prestridge disagreed with the assessment, claiming that "right now [Main Street, Inc.] ha[s] the permit to say who comes and who goes right in."  Officer Prestridge insisted that Stockstill refrain from passing out Gospel tracts anywhere in the area without a booth granted by Main Street, Inc.

12

75.      The discussion carried on, but realizing he would not be able to resolve the issue with Officer Prestridge, Stockstill asked again to speak with another authority.   Officer Prestridge responded: "You can go to the City of Picayune Main Street, and go talk to them right now, but they already told you that they don't want you handing out tracts."

76.      Stockstill inquired whether they were breaking the law by handing out tracts.  In response, Officer Prestridge clarified that Main Street, Inc controlled the process:   "You're trespassing if they said they want you to leave.  Correct."

77.      Stockstill reiterated that he wished to speak with someone else from the Police Department, but Officer Prestridge contended: "Police Department has no say-so in this.  None at all."  Clarifying this remark, Officer Prestridge explained that he was working for Main Street, Inc. that day and that he was "not on Picayune payroll right now."

78.      Wondering whether Officer Prestridge had police authority while "working for" Main Street, Inc., Stockstill asked whether Officer Prestridge was still a police officer that day. Officer Prestridge replied: "I'm a police officer 24 hours a day."   Hearing this, Stockstill repeated that he wanted to speak to someone from the Police Department, but Officer Prestridge insisted: "They-they can't tell you one way or another.  They can't give you permission to do anything."

79.      Frustrated by Officer Prestridge's evasiveness, Stockstill asked again to speak to a police department leader on duty.  Officer Prestridge then requested, via radio, that a police shift supervisor come to the scene.

80.      While waiting for the shift supervisor to arrive, Dillard tried to reason with Officer Prestridge, contending that Main Street, Inc.'s vendor rules should not apply to their

religious, noncommercial speech, but to no avail. Officer Prestridge maintained there was no difference.

81.     Dillard also asked whether standing stationary was the problem and whether they could hand out tracts if they walked around in the area, but Officer Prestridge answered: "There's nothing to understand. There's nothing to talk about. You can't walk around and hand stuff out...."

82.     Following more discussion on the topic, the conversation turned again to the noise permit. Officer Maidenbaum pointed out that he had a permit for a "designated area" and opined that a designated area would be a booth. But, Stockstill corrected him, noting the permit specifically designated West Canal street between the two red lights, right where they were standing.

83.     At that point, Officer Prestridge's supervisor, Lieutenant Gary Wilton, arrived on the scene. Officer Prestridge promptly apprised Lieutenant Wilton of his perspective: "Main Street called...And they can request anybody to leave that they want. And they don't want politicians or anybody handing out tracts, pamphlets, papers, or amplifying their voice, especially if they don't have a booth. And the only place they're allowed to hand out pamphlets, cards, anything is in front of their booth. They don't have a booth and they specifically told me over the phone that they don't want voice amplification."

84.     Officer Prestridge also mentioned the noise permit obtained by Stockstill, saying: "They have a permit from Chief Dawson that says up until raucous noise – in his writing – that can be heard at a reasonable distance, nothing is defined. So, I just basically told them no voice amplification, because that's what City of Main – City of Picayune Main Street told them."

85.    Lieutenant Wilton suggested they had been raucous recently, but Dillard pointed out that a decibel meter should be used to determine excessive noise level.

86.    Ignoring the noise permit, Lieutenant Wilton commented:  "Next time, I would suggest is pick yourself a booth."

87.    Stockstill then explained to Lieutenant Wilton that Officer Prestridge had approached them and told them they were breaking the law and had to leave, but Officer Prestridge interrupted, "No, no. I told you that you cannot pass out tracts unless you have a booth, and you have to pass them out in front of your booth.  I told you that a thousand times, but y'all not listening to me, though."  Stockstill continued, observing that, in any event, because he was presently passing out tracts without a booth, Officer Prestridge said he was breaking the law, but Officer Prestridge interjected again: "You're trespassing because they don't want you doing that here.  I told you, I explained to you, it's the same thing as if you walk into a store and says 'No firearms allowed.' You wanna start a firearm…"

88.    Assuming Main Street, Inc. had proprietary control of the area, Lieutenant Wilton asked Stockstill: "Did the organizers of this – of this thing here ask for y'all to leave?"

89.    Stockstill said they had and began to ask whether Officer Prestridge was correct in saying tract distribution violated the law.  But, Lieutenant Wilton interrupted, directing: "The people who organized this event has asked that you two leave.  So please leave."

90.    Officer Prestridge followed up with a clear warning: "Jeremy, to clarify, you're gonna be charged with trespassing if you don't leave."

91.     Stockstill asked Lieutenant Wilton to confirm that he would break the law by passing out tracts after being asked to leave. Officer Prestridge retorted: "Trespassing, yes." Lieutenant Wilton then confirmed this outcome, saying, "Yes...You were asked to leave."

92.     Dillard inquired: "But we can stay if we don't pass out tracts, right?" Stockstill assumed they could, but Lieutenant Wilton indicated otherwise: "No. They're asking you to leave."

93.     Officer Prestridge said he would check with Main Street, Inc., to see if they could stay there as long as they refrained from handing out tracts.

94.     Stockstill observed the police should have the final authority on whether they could stay. But, Lieutenant Wilton reminded: "We will enforce the rules of this event." Officer Prestridge added: "I work for [Director Beebe] and I will enforce what she asks."

95.     After checking with Director Beebe, Officer Prestridge informed Stockstill's party that they could stay in the area, warning "but you better not pass out anything else and no voice amplification. There's really nothing else to ask. That good?"

96.     Knowing that he could not effectively convey his beliefs to Festival attendees without passing out tracts or preaching, and fearing arrest, Stockstill soon left the Festival area.

97.     Stockstill and Dillard went to a nearby public sidewalk outside the confines of the Festival area, and, once situated, started passing out Gospel tracts and preaching there without amplification. This location was vastly inferior to their previous spot, but they hoped to at least reach a few people with their message.

98.     Yet, later, Officer Prestridge approached them on the sidewalk and told them they could not be anywhere near the Festival, and they would have to leave the sidewalk as well. For fear of arrest, Stockstill packed up and went home.

99.     If not for the policy granting Main Street, Inc. proprietary control over speech on public streets during the Festival, and for the threats of arrest from police officers, Stockstill would have continued distributing literature, preaching, and engaging in willing conversations about his religious beliefs that day.

**Continuing Impact on Stockstill's Expression**

100.    Stockstill wishes to return to public streets and ways for future Festivals and other events to share his religious beliefs in downtown Picayune.

101.    Stockstill is banned from distributing literature or publically proclaiming his beliefs on public streets and sidewalks anywhere near the Festival.

102.    Stockstill wants to share his beliefs without having to acquire a booth at the Festival. A booth would unduly restrict his speech. He would not be able to preach. He would not be able to hand out tracts unless people come to his booth. Stockstill also objects to the notion of paying at least $125 for speech which ought to be free on public streets and sidewalks.

103.    While Stockstill's expressive activity is banned, others are allowed to walk around or remain stationary while conversing, talking on cell phones, eating, or mingling with others in the same area.

104.    Seeking to resolve this situation without litigation, Stockstill, through counsel, sent a letter on May 29, 2015 to Dr. Ed Pinero, Mayor of Picayune, Chief Dawsey, and Nathan

17

Farmer, Picayune City Attorney, specifically requesting relief from the continuing ban on his expression on public streets and ways during the Festivals.

105.     This letter described the events that occurred on March 28, 2015 and explained why the Picayune's treatment of Stockstill violates his constitutional rights.

106.     The letter cited pertinent case law outlining Stockstill's constitutional right to speak in a traditional public forum during the Festival, explaining that neither Picayune nor Main Street, Inc. had altered the nature of the public forum during the Festival, rendering the ban on Stockstill's speech unconstitutional.  This letter asked Picayune officials to let Stockstill engage in his desired expressive activities in and near East and West Canal Streets during future festivals and events.

107.     But no city official responded to Stockstill's request.

108.     The next Picayune Street Festival will take place in March of 2016.

**Irreparable and Lasting Impact on Stockstill's Expression**

109.     As shown by Defendants' actions and statements, Picayune has an on-going policy and practice that regards the permit arrangement between Main Street, Inc. and City of Picayune as proprietary and Main Street, Inc. as a property owner of public streets during Picayune Street Festivals, empowering Main Street, Inc. to exclude undesired expression on the public property.   This unconstitutional heckler's veto is enforced by the Picayune Police Department.

110.     Picayune's application and enforcement of this policy and practice facilitates an overarching restriction on Stockstill's expression on city-owned public streets and sidewalks, including those outside the perimeters of the event.

111.     Stockstill ardently desires to return to uncongested areas of public streets in March of 2016 for the next Picayune Street Festival and share his viewpoints, but he is chilled and deterred from coming and speaking due to fear of arrest.

112.     This fear of arrest severely limits Stockstill's constitutionally-protected expression on public streets and public sidewalks in and nearby Picayune Street Festivals.

113.     The impact of chilling and deterring Stockstill from exercising his constitutional rights on public streets and ways during Picayune Street Festivals constitutes irreparable harm to Stockstill.

114.     Stockstill has no adequate remedy at law for the continued denial of his constitutional rights.

## FIRST CAUSE OF ACTION

### Violation of Free Speech Clause

115.     Stockstill's religious expression constitutes protected speech under the First Amendment.

116.     Defendants' policies and practices, and the enforcement thereof, including, but not limited to granting a private entity power over speech on public property and the resultant ban on Stockstill's expression on and near East and West Canal Streets during Picayune Street Festivals:

       a.     are vague and overbroad;

       b.     single out religious speech for discriminatory treatment;

c.      restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

d.      chill the free speech and free exercise of religion of Stockstill and third-party citizens;

e.      allow for the exercise of unbridled discretion;

f.      create a content-based heckler's veto that silences Stockstill's expression due to hostile audiences;

g.      lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and

h.      are unreasonable.

117.    Defendants have no compelling or legitimate reason that can justify their censorship of the religious viewpoints that Stockstill seeks to communicate on public streets and sidewalks.

118.    Defendants' policies and practices, and the enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

119.    WHEREFORE, Stockstill respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## SECOND CAUSE OF ACTION

### Violation of Due Process Clause

20

120.     Defendants' policies and practices of granting a private party power over speech on public property and the resultant ban on expression on and near East and West Canal Streets during Picayune Street Festivals are vague and lack sufficient objective standards to curtail the discretion of city officials. This gives Defendants abundant opportunity to enforce the policies in an *ad hoc*, arbitrary, and discriminatory manner.

121.     Defendants have no compelling or legitimate reason that can justify their vague policies and practices.

122.     The policies and practices, and Defendants' enforcement thereof, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Stockstill respectfully prays the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Stockstill respectfully prays for relief in that this Court:

A.     Assume jurisdiction over this action;

B.     Enter a judgment and decree declaring that the actions taken by Defendants in prohibiting Stockstill from sharing his religious viewpoints on a public street during the Picayune Spring Street Festival on March 28, 2015, violated Stockstill's constitutional rights, namely, his right to free speech and due process.

C.     Enter a judgment and decree declaring that Defendants' policy and practice authorizing Main Street, Inc. to retain a heckler's veto over expression taking place on public streets during Picayune Street Festivals and censor unwanted speech is unconstitutional on its face and as applied to Stockstill's desired speech (distributing literature and public preaching)

because it violates Stockstill's rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

D.      Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying Defendants' policy and practice enabling a heckler's veto of a permittee so as to restrict disfavored expression on public streets and sidewalks during public events that are free and open to the public;

E.      Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

F.      That this Court award Plaintiff nominal damages arising from the acts of the Defendants as an important vindication of his constitutional rights;

G.      That this Court award Plaintiff his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

H.      Grant such other and further relief as appears to this Court to be equitable and just.

                                          Respectfully submitted,


NATHAN W. KELLUM
TN BAR #13482; MS BAR # 8813
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117
(901) 684-5485 – Telephone
(901) 684-5499 – Fax
Attorney for Plaintiff Jeremy Stockstill

22

## VERIFICATION OF COMPLAINT

I, Jeremy Stockstill, a citizen of the United States and a resident of Picayune, Mississippi, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

_____

JEREMY STOCKSTILL