IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JEREMY STOCKSTILL                                                      PLAINTIFF

v.                                                    CAUSE NO. 1:16CV4-LG-RHW

CITY OF PICAYUNE; BRYAN DAWSEY
in his official capacity as Chief of Police
for City of Picayune Police Department;
and CHAD PRESTRIDGE individually
and in his official capacity as Patrol Officer
for the City of Picayune Police Department          DEFENDANTS

**MEMORANDUM OPINION AND ORDER CONCERNING
THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** are the Motion for Summary Judgment [42] filed by

the defendants City of Picayune, Chief Bryan Dawsey, and Officer Chad Prestridge

and the Motion for Summary Judgment [44] filed by the plaintiff Jeremy Stockstill.

Both Motions have been fully briefed.  After reviewing the submissions of the

parties, the record in this matter, and the applicable law, the Court finds that the

defendants' Motion for Summary Judgment should be granted as to Stockstill's

claims against Chief Dawsey and Officer Prestridge in their official capacities as

well as Stockstill's claims that are premised on the theory that Picayune adopted a

total ban on voice amplification within the confines of the Main Street festival.  The

defendants are also entitled to summary judgment as to Stockstill's First

Amendment claim concerning voice amplification.  The defendants' Motion is denied

in all other respects.  The Court further finds that Stockstill's Motion for Summary

Judgment should be denied.

## FACTS

In this lawsuit, Stockstill claims that the defendants violated his constitutional rights to freedom of speech and due process when they stopped him from using voice amplification and handing out religious tracts at the Picayune Street Festival on March 28, 2015. The bi-annual street festival is operated as a fundraiser by Picayune Main Street, Inc. (hereafter referred to as "Main Street"), a non-profit corporation. (Defs.' Mot., Ex. E at 1-2, ECF No. 42-5). Main Street hires off-duty police officers to provide security for the festival. (*Id.* at 2). Vendors who rent booths at the festival are prohibited from handing out information outside of their booths. (*Id.*) In the past several churches and Christian organizations have rented booths at the festival, each paying $125 in rent. (*Id.*)

Officer Prestridge was paid by Main Street to provide security for the festival on March 28, 2015. (*Id.*) He was an off-duty Picayune Police Officer, and he was wearing a shirt that said "Picayune Police," and his badge was attached to his belt.[1] He was also armed and wore a police radio. At the request of Main Street Director Reba Beebe, Officer Prestridge told Stockstill to stop handing out tracts, and he prohibited Stockstill from using a voice amplifier to preach at the festival.[2] (*Id.* at

---

[1] The manner in which Prestridge was dressed can be seen by viewing a video that Stockstill made of his conversation with Prestridge on the date of the Festival. (Pl.'s Ex. F, ECF No. 5).

[2] It is undisputed that Stockstill did not rent a booth for the festival, but he claims that he had been granted a noise permit to use a voice amplifier at the location where he was standing during the festival. Chief Dawsey admits that he signed a noise permit for Stockstill, but Chief Dawsey claims that the permit pertained to an area outside of the festival.

3).  Officer Prestridge also threatened to take Stockstill to jail if he continued to pass out tracts at the festival.  (Verified Compl. at 9, ECF No. 1).  During this discussion, Major Chad Dorn, an off-duty officer with the Picayune Police Department, called Officer Prestridge.  (*Id.*; Defs.' Mot., Ex. A at ¶9, ECF No. 42-1). Major Dorn told Stockstill via speakerphone that he was not allowed to pass out information during the festival and that he could not use a voice amplifier. (Verified Compl. at 9-10, ECF No. 1).  Major Dorn explained that Main Street had a permit for the area in which the festival was operated, and Officer Prestridge stated that violation of festival rules would be considered trespassing.  (*Id.* at 10). Lieutenant Gary Wilton of the Picayune Police Department approached and, after some discussion, told Stockstill that he needed to leave the festival, because Main Street had told him to leave.  (*Id.* at 15-16).[3]  Lieutenant Wilton agreed with Officer Prestridge that Stockstill would be trespassing if he continued to pass out tracts in violation of Main Street's rules, and he told Stockstill that the police department would enforce the festival rules.  (*Id.* at 16).

Officer Prestridge contacted Main Street Director Beebe and obtained permission for Stockstill to remain at the festival as long as Stockstill stopped handing out tracts and refrained from using voice amplification.  Stockstill then moved to a public sidewalk outside the festival, where he began passing out tracts

---

[3] It appears that Lieutenant Wilton was on-duty with the police department on the day of the festival.  (*See* Defs.' Mot., Ex. A at ¶9, ECF No. 42-1).

and preaching without amplification. (*Id.*) Officer Prestridge once again told Stockstill to leave. (*Id.* at 17).

Stockstill filed this lawsuit pursuant 42 U.S.C. § 1983 against the City of Picayune, Officer Prestridge in his official and individual capacities, and Chief Dawsey in his official capacity, claiming that they violated his rights to freedom of speech and due process. He seeks nominal damages, attorney's fees, and a permanent injunction permitting him to pass out tracts and use voice amplification at future festivals.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I. OFFICIAL CAPACITY CLAIMS AGAINST CHIEF DAWSEY AND OFFICER PRESTRIDGE

The defendants first argue that the claims filed against Chief Dawsey and Officer Prestridge in their official capacities should be dismissed, because Picayune is the real party in interest. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y.C. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Since Stockstill's claims against Chief Dawsey and Officer Prestridge in their official capacities are redundant of his claims against Picayune, the Court finds that the official capacity claims Strickland filed against Chief Dawsey and Officer Prestridge should be dismissed with prejudice. *See Fife v. Vicksburg Healthcare, LLC*, 945 F. Supp. 2d 721, 731 (S.D. Miss. 2013).

## II. STATE ACTION

"To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). "A person acts 'under color of state law' if he engages in the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (internal quotation marks omitted). "The Supreme Court has clarified that in cases under § 1983 'under color of law' has consistently been treated as the same thing as the 'state action' required under the Fourteenth

Amendment." *Blankenship v. Buenger*, 653 F. App'x 330, 335 (5th Cir. 2016) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "While the [state action] inquiry is necessarily fact-bound, whether state action exists is a question of law for the court . . . ." *Id.* (internal quotation marks omitted).

The defendants assert that Stockstill was not subjected to state action at the festival for the following reasons:

> (1) the [f]estival is operated by a non-profit organization governed by a Board of Directors that is not appointed by Picayune; (2) the non-profit organization pays off-duty officers to serve as security at the [f]estival; and (3) the security officers who principally interacted with Stockstill during the Spring 2015 [f]estival were off-duty from the Picayune Police Department and paid by the non-profit organization.

(Defs.' Mem. at 9, ECF No. 43).

"Whether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the alleged violation." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010). Regardless of whether a police officer is on-duty or off-duty, "a police officer acts under color of state law when he purports to exercise official authority." *Parks v. City of Columbus*, 395 F.3d 643, 652 (6th Cir. 2005) (quoting *Memphis, Tenn. Area Local Am. Postal Workers Union AFL-CIO v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004)). If an off-duty police officer wears a badge, identifies himself as a police officer, and threatens arrest, there is a presumption of state action. *Id.*; *see also Williams v. Dillard's Dep't Stores, Inc.*, 211 F. App'x 327, 330 (5th Cir. 2006) (holding that an off-duty police officer was acting in a public capacity, because she was wearing a uniform and badge and she performed an arrest).

-6-

In the present case, Officer Prestridge wore a badge, a gun, a police radio, and a shirt that said "Picayune Police."  He also told Stockstill that he is a police officer twenty-four hours a day, and he threatened to arrest Stockstill.  (Verified Compl. at 10, 13, 15, ECF No. 1).  Therefore, there is a presumption of state action.

Nevertheless, the defendants argue that the Fifth Circuit's decision in *Rundus v. City of Dallas*, 634 F.3d 309 (5th Cir. 2011), dictates a finding that there was no state action in the present case.  In *Rundus*, the plaintiff was twice prohibited from passing out free Bible tracts at the Texas State Fair, which was run by a private corporation, the State Fair of Texas, and was held in Dallas, Texas. *Rundus*, 634 F.3d at 311.  The State Fair of Texas was a tenant of the City of Dallas.  *Id.* at 311, 314.  Admission to the Fair was only permitted for those who had purchased tickets at a price set by the State Fair.  *Id.* at 312.  The City assigned approximately 160 police officers to patrol the fair.  *Id.*  These officers "enforce[d] applicable laws, including criminal trespass, but [did] not enforce [State Fair's] rules and regulations."  *Id.*

The State Fair paid a portion of the officers' wages for the fair.  *Id.* at 313.  The State Fair had enacted a rule prohibiting the distribution of literature without a booth rental.  *Id.* at 312.  The *Rundus* plaintiff sued the State Fair of Texas and the City of Dallas, alleging that the State Fair's prohibition of distribution of literature violated his First Amendment rights.  *Id.*  The Fifth Circuit opinion did not discuss any direct interaction between the *Rundus* plaintiff and city police officers or other city officials.  *See id.*  It addressed the question of whether the

private corporation State Fair of Texas was a state actor and whether the city had delegated policy-making authority to the State Fair.  *Id.* at 312 and n.4.

Since the City of Dallas had "no say in [the State Fair's] internal decision making, and had no role in enacting or enforcing the restriction on distribution of literature" and the Dallas police enforced "only criminal statutes and ordinances that provided neutral assistance," the *Rundus* court found that the State Fair was not a state actor.  *Id.* at 314, 315.  In making this finding, the *Rundus* court distinguished cases from other circuits that had found state action.  *Id.* at 314.  For example, *Parks v. City of Columbus*, 395 F.3d 643 (6th Cir. 2005), was distinguishable because the city at issue in *Parks* had "aided the private event organizers in enforcing their speech restrictive regulations" and "the event organizers held a permit, and were not the city's tenants."  *Id.*  The court distinguished *Wickersham v. City of Columbia*, 481 F.3d 591 (8th Cir. 2007), because "[t]he City of Columbia not only provided critical assistance in planning and operating the [air] show, but also played an active role in enforcing the particular speech restrictions . . . ."  *Id.*  Furthermore, the Columbia police force's actions went "beyond the kind of neutral assistance that would normally be offered to private citizens in enforcing the law of trespass."  *Id.*

In the present case, Main Street is a permit-holder, not a tenant.  A Picayune police officer who was purporting to exercise official authority told Stockstill to leave and threatened to arrest him for trespassing, because Main Street did not want Stockstill to pass out tracts at the festival.  Other police officers, one of whom

was on-duty, also made similar statements and threats.  These police officers possessed power by virtue of state law and their actions were made possible by their official authority.  *See Bryant*, 597 F.3d at 686 (noting that an officer's conduct must have been made possible by the officer's state authority to be consider state action).  Stockstill is not attempting to demonstrate that Main Street is a state actor or that Picayune should be held liable for the actions of Main Street.  *See McMahon v. City of Panama City Beach*, 180 F. Supp. 3d 1076, 1104 (N.D. Fla. 2016) (distinguishing *Rundus* in a case with facts very similar to the case at bar).  Stockstill has sued Picayune for its own actions in enforcing Main Street's rules.

Most importantly, while the city officers in *Rundus* did not enforce State Fair's rules, the Picayune Police Chief has indicated that the Picayune Police Department does enforce Main Street's rules.  Specifically, in an affidavit he testified:

> The Picayune Police Department intends to enforce the following rules at future Festivals: With respect to distributing literature, individuals may not distribute literature inside of the Festival unless they do so from the confines of a rented booth. Individuals may, however, distribute literature from the public streets and sidewalks directly outside of the Festival.  With respect to sound amplification, individuals may not use amplification devices inside of the Festival without a sound ordinance variance.  The Police Chief will consider variances, however for designated areas in close proximity to the Festival.

(Defs.' Mot., Ex. 1 at ¶10, ECF No. 42-1).  Therefore, it appears that the assistance provided to Main Street by the Picayune Police Department exceeds the kind of neutral assistance that would normally be offered to private citizens in enforcing the law of trespass.  *See Bays v. City of Fairborn*, 668 F.3d 814, 820 (6th Cir. 2012)

(holding that state action existed where city officials supported and actively enforced a private entity's policies). Picayune's actions and the actions of its officers, whether on-duty or off-duty, constituted state action.[4]

## III. MUNICIPAL LIABILITY

A municipality is subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor." *Id.* at 691. Thus, a § 1983 plaintiff is required to demonstrate that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017).

> Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. But a policy may also be evidenced by custom that is: " . . . a persistent, widespread practice of City officials or employees, which, although not officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . . . Actions of officers or employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as above defined."

*Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).

---

[4] The question of whether the police department's enforcement of the policy constituted official policy adopted by an official policymaker will be addressed separately.

The question of whether a particular official has policymaking authority is a question of law that should be made by looking to state law. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016) (citing *City of St. Louis v. Prapotnik*, 485 U.S. 112, 124 (1988)). Under Mississippi law, "[t]he governing authorities of municipalities shall have power to make all needful police regulations necessary for the preservation of good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property." Miss. Code Ann. § 21-19-15(1). According to Picayune's website, it has adopted a Council-Manager plan of government. City of Picayune, http://www.picayune.ms.us/departments/city-manager/ (last visited July 5, 2017). Under the Council-Manager plan of government, "[t]he mayor and councilmen shall constitute the governing body of such city or town and shall be known as the city council or the town council as the case may be." Miss. Code Ann. § 21-9-35.

In their Memorandum [43], the defendants argue that Stockstill cannot demonstrate liability on the part of Picayune, because he has failed to identify a policy promulgated by an official policymaker. Although it appears that the defendants may have abandoned this argument by failing to mention it in their reply memorandum, the Court will consider whether Stockstill has met his burden of proof.

In his response, Stockstill identifies the following policy included in an affidavit signed by the Picayune police chief:

> The Picayune Police Department intends to enforce the following rules at future Festivals: With respect to distributing literature, individuals

> may not distribute literature inside of the Festival unless they do so
> from the confines of a rented booth. Individuals may, however,
> distribute literature from the public streets and sidewalks directly
> outside of the Festival.  With respect to sound amplification,
> individuals may not use amplification devices inside of the Festival
> without a sound ordinance variance.  The Police Chief will consider
> variances, however for designated areas in close proximity to the
> Festival.

(Defs.' Mot., Ex. 1 at ¶10, ECF No. 42-1).  Under Mississippi law, it appears that the

police chief may not be the official policymaker for Picayune.  *See* Miss. Code Ann. §

21-19-15(1); Miss. Code Ann. § 21-9-35.  Since Picayune did not respond to

Stockstill's arguments in its reply memorandum, it is unclear whether Picayune's

governing authority adopted the policy described by the police chief or whether the

governing authority delegated policymaking authority to the police chief.

While the record in this matter is undeveloped as to the identity of the official

policymaker, the police chief's affidavit, coupled with Picayune's failure to dispute

Stockstill's arguments in its reply, is sufficient to withstand summary judgment.

As a result, the Court finds that a genuine issue of material fact exists as to

whether the police officers at the festival were acting pursuant to a policy

promulgated by an official policymaker when they prohibited Stockstill from

handing out religious tracts.  Stockstill is cautioned that at trial, he will be required

to demonstrate that the policies at issue were adopted by an official policymaker

and to demonstrate the identity of that policymaker.

However, to the extent that Stockstill claims that Picayune has adopted a

total ban on voice amplification within the festival grounds, he has not provided any

evidence to support this assertion.  The police chief's affidavit indicates that

amplification would be permissible within the festival grounds if a variance is granted.[5]  As a result, any of Stockstill's claims that are premised on the theory that Picayune has adopted a total ban on voice amplification within the festival grounds must be dismissed for failure to provide evidence of an official policy promulgated by an official policymaker.

## A.  DUE PROCESS

The defendants also argue that Stockstill's Fourteenth Amendment due process claim should be dismissed, because it is duplicative of Stockstill's freedom of speech claim.  In support of this assertion, the defendants rely on cases holding that where a particular Amendment to the Constitution "provides an explicit textual source of constitutional protection against [a particular sort of government behavior,] the Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims."  *See Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *see also Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 442 (5th Cir. 2015). Stockstill counters that he has not asserted a substantive due process claim; rather, he has asserted a claim pursuant to the vagueness doctrine.

---

[5] Stockstill claims that he was prohibited from using amplification even though he was granted a noise permit that permitted amplification within festival grounds. The police chief disputes this assertion.  Nevertheless, if Officer Prestridge and the other officers violated Picayune's official policy of allowing amplification pursuant to a permit, then there can be no municipal liability.  *See Jackson v. Ford*, 544 F. App'x 268, 272 (5th Cir. 2013) (holding that official policy could not constitute constitutional violation where county employees violated official policy); *Minor v. Jackson Mun. Airport Auth.*, No. 3:15cv936-DPJ-FKB, 2016 WL 4869696, at *2 n.2 (S.D. Miss. Sept. 13, 2016).

"'Vagueness' is a question of notice, i.e., procedural due process . . . ." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016); *see also San Filippo v. Bongiovanni*, 961 F.2d 1125, 1138 (3d Cir. 1992) (distinguishing a vagueness attack from a substantive due process claim). The "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause . . . ." *Munn v. City of Ocean Springs*, 763 F.3d 437, 439 (5th Cir. 2014). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Machete Prods., LLC v. Page*, 809 F.3d 281, 291 (5th Cir. 2015) (explaining that the Due Process Clause "protects speakers from arbitrary and discriminatory enforcement of vague standards").

> Vagueness-as-applied considerations often enter into First Amendment overbreadth cases, where the court finds that the catchall statute, while giving notice of most proscribed conduct may nonetheless chill constitutionally-protected free speech because of the uncertainty of a speaker as to whether his speech will or will not fall within the scope of the vague area of the regulation and incur governmental sanction.

*Shawgo v. Spradlin*, 701 F.2d 470, 477 (5th Cir. 1983) (citing inter alia *Bence v. Breier*, 501 F.2d 1185, 1188 (7th Cir. 1974)). "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (internal quotation marks and ellipsis omitted).

The record in this matter reflects that Stockstill is attempting to assert a vagueness claim, not a substantive due process claim. In their reply, the defendants argue in the alternative that Stockstill's purported due process claim is

-14-

not a valid claim for vagueness. (Defs.' Reply at 3, ECF No. 55). This Court will not consider an argument made for the first time in a reply brief, particularly where the non-movant has not had an opportunity to respond to the argument. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008). As a result, the Court finds that the defendants' Motion for Summary Judgment as to Stockstill's due process claim should be denied to the extent that this claim is not based on Stockstill's contention that Picayune adopted a total ban on voice amplification.[6]

## B.  FREEDOM OF SPEECH

The First Amendment, which is applied to the states and their political subdivisions through the Due Process Clause of the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. 1; *Catholic Leadership Coal. of Tex. v. Eisman*, 764 F.3d 409, 414 n.1 (5th Cir. 2014). "[T]he oral and written dissemination of . . . religious views and doctrines" is included within this protection. *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Id.*

The appropriate standard of review for government restrictions on the freedom of speech depends on the type of forum in which the speech was restricted.

---

[6] Stockstill's Motion for Summary Judgment appears to be based solely on his First Amendment claim. To the extent that Stockstill may have intended to seek summary judgment as to his due process claim, the Court finds that Stockstill has not provided sufficient argument or legal authority to demonstrate that he is entitled to summary judgment as to that claim.

There are three categories of forums: "(1) traditional and designated public forums; (2) limited public forums; and (3) nonpublic forums." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 757-58 (5th Cir. 2010). Stockstill argues that the streets where the festival was held remained a traditional public forum during the festival, but the defendants claim that the privately-run festival converted the streets to a non-public forum.

"Traditional public forums include sidewalks, streets, and parks that the public since time immemorial has used for assembly and general communication." *Id.* at 758. "The state can also intentionally create 'designated' public forums on other state property for the same widespread use as traditional public forums." *Id.*

> [E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1981) (internal quotation marks omitted).

The defendants concede that the streets on which the festival is conducted are generally considered public forums, but they assert that "such forums may temporarily be converted to non-public forums when the government provides exclusive use to the private entity." (Defs.' Mem. at 10, ECF No. 43). In support of this assertion, they rely on *Sistrunk v. City of Strongsville*, 99 F.3d 194, 196 (6th

Cir. 1996).[7]  However, *Sistrunk* is distinguishable, because the event at issue in that case was a closed political rally organized by a committee supporting President George H.W. Bush's 1992 reelection campaign.  *Sistrunk*, 99 F.3d at 196.  Although the location of the rally was typically a public area, the rally itself was "limited to the members of the organization and their invitees" pursuant to a permit obtained from the city.  *Id.*  The Sixth Circuit held that the First Amendment rights of a high school student were not violated when she was required to remove a Bill Clinton button prior to entering the rally.  *Id.* at 196, 200.  The court explained that the student's "only claim [was] that she was not permitted to participate *in the committee's speech* while expressing her own discordant views."  *Id.* at 199.

In the present case, the festival was open to the public, and Stockstill was not attempting to interfere with the speech rights of Main Street.  There is no evidence in the record that Main Street is attempting to convey any particular message at the festival, particularly since it rents booths to over 300 information and food vendors, including churches from several different denominations.  (Defs.' Mot., Ex. E at ¶¶ 7-8, ECF No. 15-5).

The defendants claim that Main Street was granted an exclusive permit for the festival, but they have produced no evidence to support this assertion.  Even if

---

[7] The defendants also cite *United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902 (4th Cir. 1995), but in that case, the Fourth Circuit did not reach the issue of whether the streets at issue remained a traditional public forum during a privately-run festival, because the court found there was no state action.  Their reliance on *Wickersham v. City of Columbia*, 371 F. Supp. 2d 1061 (W.D. Mo. 2005), is likewise misplaced because that case concerned an airport tarmac that had never been designated as a public forum.

the permit were exclusive, that would not necessarily change the public nature of the forum, because the government "may not by its own *ipse dixit* destroy the 'public forum' status of streets and parks which have historically been public forums." *McMahon*, 180 F. Supp. 3d at 1097 (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)). Traditional public forums remain public during private, open-to-the-public events held on public property pursuant to a permit. *Parks*, 395 F.3d at 652; *see also Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (holding that a festival sponsored by a private entity did not convert the city streets to a non-public forum because "it [was] a public festival, held on public city streets, free and open to all members of the general public"). As the Sixth Circuit noted when it distinguished the *Sistrunk* decision, "the City cannot . . . claim that one's constitutionally protected rights disappear because a private party is hosting an event that remained free and open to the public." *Parks*, 396 F.3d at 652. As a result, the streets on which Main Street's festival was held remained a traditional public forum.

Since the festival site was a traditional public forum, the Court must next determine whether Picayune violated Stockstill's First Amendment rights when it prohibited him from distributing religious tracts and using a voice amplifier during the festival. The government can impose a time, place, and manner restriction on speech at a traditional forum if (1) it is content neutral; (2) it is "narrowly tailored to achieve a significant government interest"; and (3) it "leave[s] open ample alternative channels of communication." *Ward*, 491 U.S. at 791. The requirement

of narrow tailoring is satisfied as long as the restriction "promotes a substantial government interest that would be achieved less effectively absent the regulation" and does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 799. However, the restriction "need not be the least restrictive or least intrusive means" of serving the government's significant interests. *Id.* at 798. Thus, a court's conclusion that the government's interest "could be adequately served by some less-speech-restrictive alternative" is not sufficient to invalidate a restriction. *Id.* at 800.

Stockstill argues that the restrictions are content-based, but he has not provided any evidence to support this argument.[8] He also asserts that the restrictions are not narrowly tailored to a significant or legitimate government interest and do not leave open ample alternative channels of communication.

Picayune claims that the restrictions serve the following governmental interests: (1) the public's comfort and enjoyment of the streets, (2) the success of community events and local businesses, (3) safety and protection, (4) convenient flow of pedestrian traffic, (5) noise reduction, (6) litter control, and (7) aesthetics. (Defs.' Mot., Ex. A at ¶12, ECF No. 15-1). Generally, a governmental entity's "interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective." *Heffron*, 452 U.S. at 650. Furthermore, limiting

---

[8] Stockstill's argument that the restrictions were content-based is confined to a single footnote in his Response. (Pl.'s Resp. at 7 n.3, ECF No. 51). He merely argues that that Picayune's enforcement of festival rules necessarily must constitute a content-based restriction.

sound volume is a substantial interest.  *See Ward*, 491 U.S at 796 (explaining that

protecting the public from excessive noise is a significant public interest even in a

traditional public forum).  Nevertheless, "the significance of the governmental

interest must be assessed in light of the characteristic nature and function of the

particular forum involved."  *Heffron*, 452 U.S. at 650-51.  Therefore, the

governmental entity "must demonstrate that the recited harms are real, not merely

conjectural, and that the regulation will in fact alleviate these harms in a direct and

material way."  *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622,

664 (1994).  Furthermore, the consideration should not be limited to the amount of

disruption that the plaintiff alone would cause, but the aggregate effect of all other

individuals and organizations that would be entitled to distribute literature and/or

use amplification devices.  *See Heffron*, 452 U.S. at 654.

As explained previously, some of Stockstill's claims appear to be based on his

contention that Picayune has adopted a total ban on voice amplification within the

festival, but there is no evidence of an official municipal policy of this nature.  To

the extent that Stockstill may also be contesting Picayune's noise permit policy, the

Court finds that this policy is narrowly tailored to the significant government

interest of noise reduction.  If Picayune were required to allow individuals and

organizations to use unlimited voice amplification within the festival grounds,

members of the public would be bombarded with numerous messages

simultaneously, resulting in excess noise and chaos.  Stockstill argues that

Picayune's interest in noise reduction is not legitimate, because it allows the festival

organizers to play loud music at certain locations within the festival grounds. Allowing amplified music in specified locations at the festival is vastly different from allowing numerous individuals and organizations to use voice amplification throughout the festival grounds. Stockstill is still allowed ample alternative channels of communication, because he can apply for a noise permit to allow him to amplify his voice or he can speak to passers-by using his natural voice.

The Court finds that a genuine issue of material fact exists regarding whether Picayune's enforcement of the literature ban is narrowly tailored to a significant government interest.[9] While Picayune has produced some evidence indicating that the festival can become very crowded at times, there is other evidence indicating that crowding may not be an issue in some portions of the festival grounds. Furthermore, it is unclear whether individuals passing out literature would cause safety issues, crowding, or other issues during the festival, particularly if those activities were restricted to less congested areas of the festival. Picayune has not demonstrated the extent to which the literature ban contributes to the success of community events and local businesses, particularly since there is no evidence concerning the number of festival booth rentals that would likely be lost if individuals were permitted to pass out literature outside of booths. Specifically, there is no evidence concerning the average number of information-only booths versus the number of food or merchandise booths at the festival.

---

[9] The Court does not reach the issue of whether the literature restriction leaves open ample alternative means of communication.

The parties' Motions for Summary Judgment are denied as to Stockstill's First Amendment claim concerning passing out literature at the festival. The defendants' Motion for Summary Judgment is granted and Stockstill's Motion for Summary Judgment is denied as to Stockstill's First Amendment claims against Picayune concerning voice amplification.

## IV. QUALIFIED IMMUNITY

The defendants also argue that Officer Prestridge is entitled to qualified immunity as to the claims filed against him in his individual capacity. "Qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law." *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether an official is entitled to qualified immunity, the court asks (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008). Once a defendant invokes qualified immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense. *Crostley*, 717 F.3d at 422 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

As explained previously, a genuine issue of material fact exists regarding whether Stockstill's constitutional rights were violated. Furthermore, Stockstill claims that Officer Prestridge not only prevented Stockstill from preaching and

passing out literature within the festival grounds but also *outside* the festival grounds.  The defendants have not identified any substantial interest that would have been served by banning Stockstill from preaching or handing out literature outside the festival.  Stockstill also asserts that Prestridge prevented him from using voice amplification even though he had a permit allowing amplification within festival grounds.  If Stockstill's testimony is believed, Prestridge's conduct was objectively unreasonable under clearly established law.  Therefore, the defendants have not demonstrated that Officer Prestridge is entitled to qualified immunity.

## V.  LAW OF THE CASE DOCTRINE

The defendants argue that they are entitled to summary judgment based on the law of the case doctrine.  They claim that this Court's prior Order [21] denying Stockstill's Motion for a Preliminary Injunction, which was affirmed by the Fifth Circuit on appeal, should be treated as the law of the case, thus requiring an award of summary judgment.  In support of this assertion, the defendants cite *Gaalla v. Brown*, 460 F. App'x 469, 476 (5th Cir. 2012).  In *Gaalla*, the Fifth Circuit explained that "a decision on interlocutory appeal of the grant of a preliminary injunction constitutes law of the case as to legal determinations," but not as to factual determinations.  *Gaalla*, 460 F. App'x at 476.   However, the law of the case doctrine "extends only to matters actually decided."  *Royal Ins. Co. of Amer. v. Quinn-L Capital Corp.*, 3 F.3d 877, 881 (5th Cir. 1993).

On interlocutory appeal, the Fifth Circuit affirmed this Court's decision "essentially for the reasons stated in the district court's comprehensive oral findings

and conclusions." *Stockstill v. City of Picayune*, 669 F. App'x 216, 216 (5th Cir. 2016). After a thorough discussion of relevant case law, this Court provided the following reasoning to support its decision to deny Stockstill's request for a preliminary injunction:

> So taking all of the facts into consideration, considering all of the case law here, which you know, as has been indicated more than once, none of it is directly on point with all of the facts and issues here, but certain parts of them do speak to certain parts of this case, the Court is of the view that, as has been acknowledged, the restrictions are content neutral. I think it's a certainly debatable question whether these things are narrowly tailored to achieve a substantial government interest. I think the government functions at issue are substantial. And I think there are alternative means of communication.
>
> But at the end of the day, a close question, in the Court's view, means that the plaintiff has not shown a substantial likelihood of success on the merits, which is the high burden he must carry at a preliminary injunction hearing. And, of course, the Court expresses no view about what the ultimate resolution of the case might be . . . .

(Tr. at 29, ECF No. 22).

This Court, and thus the Fifth Circuit, made no determination regarding whether the restrictions at issue were narrowly tailored to a significant government interest. As a result, the law of the case doctrine does not compel an award of summary judgment to Picayune.

## CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter this result. Stockstill's claims filed against Chief Dawsey and Officer Prestridge in their official capacities are dismissed, because these claims are redundant of his claims filed against Picayune. Stockstill's due process and freedom of speech claims against Picayune are dismissed to the extent that those claims are premised on Stockstill's assertion that Picayune adopted a total ban on voice amplification within the festival grounds, because Stockstill has not provided any evidence that Picayune has adopted such a policy. Any remaining freedom of speech claim concerning voice amplification must be dismissed, because Picayune's policy of utilizing noise permits to limit voice amplification is narrowly tailored to the significant government interest of noise reduction and Picayune's policy offers ample alternatives. The remainder of the defendants' Motion for Summary Judgment and the entirety of Stockstill's Motion for Summary Judgment are denied due to the existence of genuine issues of material fact.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [42] filed by the defendants City of Picayune, Bryan Dawsey, and Chad Prestridge is **GRANTED IN PART AND DENIED IN PART**. Stockstill's claims against Officer Prestridge and Chief Dawsey in their official capacities are **DISMISSED WITH PREJUDICE**. Portions of Stockstill's due

process and freedom of speech claims are **DISMISSED WITH PREJUDICE** as set forth herein.

    **IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [44] filed by the plaintiff Jeremy Stockstill is **DENIED**.

    **SO ORDERED AND ADJUDGED** this the 18th day of July, 2017.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE